UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-2317** |
| **AC MARINE, INC.** | **SECTION: "A" (4)** |

**ORDER**

Before the Court is Defendant, AC Marine, Inc.'s, ("AC") ***Ex Parte* Motion for Expedited Hearing and Incorporated Memorandum (R. Doc. 10)**, seeking expedited consideration of its **Motion to Compel Independent Medical Examination (R. Doc. 9)**, which in turn seeks to compel an independent medical examination ("IME") of Plaintiff, John Roberts, ("Roberts"); to enjoin Roberts from submitting to any surgeries on his right or left knees until after AC has an opportunity to conduct its IME; and for the reasonable attorney's fees, costs, and expenses it has incurred in filing the instant motion. Pursuant to Court Order Roberts submitted a motion in opposition, which addressed the substance of AC's motion (R. Docs. 11, 12); thereafter, AC filed a Reply (R. Doc. 14). The underlying motion is noticed for submission on May 8, 2013.

**I. Background**

  **A. Roberts' Complaint**

This is a personal injury case arising from a marine accident, for which, according to Roberts, the Court has jurisdiction pursuant to "the Jones Act, General Maritime Law and Diversity." (R. Doc.

1, pp. 1-2).[1]  Roberts, who brought suit on September 19, 2012, alleges that he was previously employed as a seaman on the M/V BRAD C; on September 7, 2011, while in the course and scope of his employment, he suffered an injury to his "knee and other parts of his body." *Id.* at 2.  Roberts has sued AC, which owned and operated the M/V BRAD C, under a negligence theory, and has asserted damages claims for, *inter alia*, physical, mental, and emotional pain and suffering, loss of wages, disability, and medical expenses.  *Id.* at 3.  Roberts has also brought a claim for punitive damages against AC under general maritime law.  *Id.* at 4.

### B.  Roberts' Course of Medical Treatment

In support of its motion, AC argues that Roberts was first treated for his alleged injuries on September 14, 2011, after which he returned to work.  (R. Doc. 9-1, p. 2).[2]  AC also argues that on September 28, 2011, Roberts was examined for an "employment related physical" by Dr. Roger Blanchard, ("Dr. Blanchard").  At that time, Roberts told Dr. Blanchard about an issue with his right knee; however, he did not seek treatment for this injury for approximately five months.  *See id.*

AC argues that shortly before his alleged injury, in August 2011, Roberts had driven a coworker to an orthopedic surgeon at the Houma Orthopedic Clinic, ("Clinic") - a fact of which AC was not aware at the time.  *Id.*  In March 2012 AC became aware of Roberts' Houma trip, and was also told by Roberts that his right knee "was still bothering him."  *Id.*  AC argues that Roberts then requested a medical examination of his right knee, and requested that the examination take place at the Clinic.  *See id.*  AC contends that while it contacted the Clinic and referenced Roberts' right knee as the subject of the treatment, it failed to specify a particular Clinic doctor.  *Id.*

---

[1] Roberts fails to provide a specific citation to a federal statute in his Complaint.

[2] Roberts does not contest all of AC's argued facts.  Objections to the same are noted below as appropriate.

2

AC argues that on March 28, 2012, Roberts' right knee was evaluated by a Clinic doctor, Michael LaSalle ("Dr. LaSalle"). *Id.* at 3. Dr. LaSalle then performed an orthopedic procedure on Roberts' right knee on April 26, 2012. *Id.* Roberts then began undergoing physical therapy, and was released back to work by Dr. Lasalle on June 25, 2012. *Id.* Roberts continued to work at AC until he "voluntarily quit" on August 9, 2012. *Id.*

On August 17, 2012, Roberts visited Dr. LaSalle for the last time. *Id.* AC argues that the medical records indicate that Roberts' *right* knee had fully recovered, but that he was now complaining of problems with his *left* knee. *Id.* Roberts then sought treatment from another doctor, Theodore Jordan, III ("Dr. Jordan"). AC argues that Roberts has seen Dr. Jordan on two occasions: October 16, 2012, and December 20, 2012. *Id.* Dr. Jordan has performed an MRI on Roberts, which according to his December 20, 2012, medical notes revealed "evidence of previous meniscectomy." (R. Doc. 9-3, p. 2). On that date Jordan "discussed options" with Roberts, including "the possibility of an arthoscopy," should a proposed "injection" fail to work. *Id.* AC admits that Dr. Jordan has not formally recommended surgery of any kind.

In light of Dr. Jordan's remarks, AC has requested that Roberts make himself available on May 1, 2013 for an independent medical examination by a third orthopedic surgeon, Dr. Lance Estrada ("Dr. Estrada"). *Id.* at 4, 6 & n.1. AC has attached to its motion an email dated April 18, 2013, in which it notified Roberts of the proposed examination. (R. Doc. 9-4, p. 1). Later on that same day Roberts' counsel responded, and stated that Roberts would not agree to see Dr. Estrada, due to the fact that AC had "already selected its choice of physician who performed the surgery," i.e., Dr. LaSalle. *Id.* According to the email, Roberts was willing to return to Dr. LaSalle for an examination. *Id.*

As to the instant motion, AC seeks an Order from this Court compelling Roberts to appear for

3

an independent medical examination. The motion is opposed.

## II.  Standard of Review

Federal Rule of Civil Procedure ("Rule") 35 provides in pertinent part that a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy. Rule 35(a)(1). The court may issue such an order "on motion for good cause and upon notice to all parties and the person to be examined" which specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *Id.* at 35(a)(2). To demonstrate entitlement to conduct the IME, a party must satisfy two criteria. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*. at 119.

## III.  Analysis

### A.  Motion to Expedite

In support of its motion to expedite, AC argues that it has noticed the motion for May 8, 2013, but that its proposed IME date is scheduled for May 1, 2013. (R .Doc. 10, pp. 1-2). The Court notes that considering the inherent difficulties in scheduling medical examinations, and the potential deleterious effects of unduly delaying the same, expedited consideration of the underlying motion inures to the benefit of both parties. As such, the Court **GRANTS** expedited consideration of the

4

underlying motion.

### B.     Motion to Compel Medical Examination

#### 1.     Entitlement to Examination

##### a.     Whether AC Had a Prior Opportunity to Examine Roberts

The parties do not contest that Roberts' medical condition is at issue in this suit. Moreover, in his opposition, Roberts does not contest the type of treatment he has obtained from either Dr. LaSalle and Dr. Jordan, nor that AC had no input into Roberts' decision to see Dr. Jordan. The parties also agree that Dr. Jordan has not formally recommended surgery, but merely noted that it is a possibility. However, Roberts takes issue with several of AC's other factual characterizations.

Specifically, Roberts argues that he did not "select" the Clinic for treatment in general, or Dr. Lasalle specifically, as AC has claimed. (R. Doc. 12, p. 3). According to Roberts' deposition testimony, which he has attached to his motion, Roberts merely told a representative from AC "where I took that boy," i.e., the other employee whom Roberts had driven to the Clinic in August 2011. (R. Doc. 12-1, p. 3). Roberts then states that AC arranged for his visit to the Clinic. For this reason, Roberts concludes that AC effectively selected Dr. LaSalle to perform a medical examination. (R. Doc. 12, pp. 3-4). As such, Roberts argues that AC is not entitled to a second medical examination "in relation to his right knee" because his treatment with Dr. Jordan is the natural progression" of his treatment with Dr. LaSalle. (R. Doc. 12, pp. 3-4).

Under Rule 35(a), prior to permitting a second medical examination, the Court must find that a defendant has *not* already obtained an examination and report enabling a sufficient defense of the plaintiff's claims. *See DeCrescenzo v. Maersk Container Service Co.*, 741 F.2d 17, 21 (2d Cir. 1984); *Glaze v. Bud's Boat Rental, Inc.*, No. 93-1334, 1993 WL 441890, at *1 (E.D. La. Oct. 21, 1993) (citing

*DeCrescenzo*); *Bowie v. American Home Assurance Co.*, 2008 WL 2050991, at *3 (M.D. La. May 13, 2008) (same). Rule 35's use "should not give rise to an appearance that any party is being permitted by the Court to shop for examiners in the same field of expertise until the most favorable one is located." *Case v. Offshore, Inc.*, No. 95-3239, 1996 WL 210720, at *1 (E.D. La. Apr. 29, 1996).

In its Reply, AC argues that it did not have any input into Roberts' course of treatment with Dr. LaSalle because it cannot *speak* with LaSalle. (R. Doc. 14, pp. 2-3). AC argues that in the "spirit of compromise," it need not conduct its IME with Dr. Estrada if Roberts will permit it to speak with Dr. LaSalle. *Id.* at 3 n.1). Notably, although Roberts argues that AC *selected* Dr. LaSalle and that it is willing to have Roberts submit to another examination with Dr. Lasalle, he never argues that AC has in fact been able to *speak* with Dr. LaSalle.

A defendant who cannot *speak* with a medical practitioner has presumably not "obtained an examination and report" allowing it to adequately defend the action. *See Mathais v. Omega Protein, Inc.*, No. 10-2835, 2011 WL 1304000, at *2-*3 (E.D. La. Apr. 1, 2011) (finding second IME impermissible where defendant directed course of post-accident medical treatment and has "chosen almost all of the doctors who performed the first examinations" of plaintiff). Therefore, even if AC at one time "selected" Dr. LaSalle, or helped Roberts "select" Dr. LaSalle, the Court cannot conclude that AC has in fact obtained a comprehensive "report" which would allow it to adequately defend itself in this action.

        **b.**     **Merits of Second Examination**

Admittedly, AC has attached to its motion a number of medical records from Roberts which suggest that it has obtained at least some information from Dr. LaSalle and Dr. Jordan. *See* (R. Docs. 9-2, 9-3). Assuming *arguendo* that the medical records attached to AC's motion can be construed as

6

an "examination and report," the Court would still find that AC is entitled to conduct a second IME in this case.

The plain language of Rule 35(a) does not limit a party to one medical examination. *Davis v. Baker Hughes Oilfield Operations, Inc.*, Nos. 05-2679, 07-1092, 2007 WL 1558721, at *2 (E.D. La. May 29, 2007). Rule 35(a)'s "good cause" standard may entitle the plaintiff to more than one examination if the circumstances warrant the same. *See Moore v. Calavar Corp.*, 142 F.R.D. 134, 135-36 (W.D. La. 1992). "Examples of circumstances which have been held sufficient to justify second examinations include: (a) separate injuries calling for examination by *distinct medical specialities*; . . . (c) where the first examination was not adequate or complete; and (d) where a substantial "time lag" occurred between the initial examination and the trial." *Id.* (emphasis added).

However, Rule 35(a) examinations, "like all other forms of discovery, are subject to the general provision of Rule 26(c) that the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 323-24 (N.D. Ga. 2000) (citation omitted). As such, "[w]here the moving party has already made an examination in the past, . . . the court will require a stronger showing of necessity before it will order repeated examinations." *Mayfield v. Continental Underwriters, Ltd.*, (2007 WL 4522602, at *2-*3 (W.D. La. Dec. 14, 2007) (finding no entitlement to third IME where there was no evidence that prior IME's had been inadequate).

In this case, it is not explicitly clear from AC's filing whether Dr. Jordan examined Roberts' right knee, left knee, or both, or whether Dr. Estrada proposes conducting an IME on Roberts' right knee, left knee, or both. *See* (R. Doc. 9-3, pp. 1-2). AC argues that Dr. Jordan has been treating Roberts for his "dual knee injuries." (R. Doc. 9-1, p. 6). In his opposition, Roberts never contests that

7

on August 17, 2012 he registered complaints about his left knee with Dr. LaSalle; that Dr. Jordan has been treating Roberts for his *left* knee; or that AC would not be entitled to request an IME for Roberts' *left* knee. *See* (R. Doc. 12, pp. 3-4).

Here, although Roberts' injuries have been treated by the same *type* of medical practitioner, they were not treated by the *same* practitioner. Further, Dr. LaSalle, although alerted to Roberts' left knee issue at the end of his course of treatment, does not appear to have conducted any further inquiry into Roberts' alleged left knee injury. Therefore, Roberts' *left* knee injury is clearly a "separate" injury for purposes of entitlement to a second IME because there is no indication that Dr. LaSalle had an adequate opportunity to investigate it.

Similarly, the Court cannot find that Dr. LaSalle's treatment, which concluded that Roberts' right knee injury had healed, was "adequate." Indeed, Dr. Jordan's office notes indicate that there were further complications with Roberts' right knee which required additional diagnosis, testing, and potential surgery. The length of time which has now passed - Roberts allegedly sustained injury in September 2011, began a course of treatment with Dr. LaSalle in March 2012, was discharged from this treatment on August 17, 2012, and it is now late April 2013 - is significant, especially in light of the fact that Dr. Jordan indicates that Roberts' right knee injury did not fully heal. Finally, AC cannot be said to be "shopping" for a more favorable IME because in this case Dr. LaSalle's report indicated that Roberts' right knee injury had healed, a fact which Dr. Jordan has contradicted. In sum, even to the extent that AC's proposed IME would constitute a "second" IME, AC has presented a strong set of facts entitling it to pursue the same.

### 2. Scope of Examination

As noted above, the scope of AC's proposed examination is not explicit. Courts elsewhere

8

have been skeptical of vague requests to conduct Rule 35(a) medical examinations because "[b]y its very terms, Rule 35(a) does not afford a carte blanche right of . . . examination." *In re Certain Asbestos Cases*, 112 F.R.D. 427, 434 (N.D. Tex. 1986) (finding that, in multi-plaintiff wrongful death case, plaintiff must plead specific facts entitling it to conduct autopsy of each plaintiff). Instead, the Court must consider the information submitted by the mover which supports their entitlement to perform the examination. *Schlagenhauf*, 379 U.S. at 118-19; *Howell v. Hillcorp Energy Co.*, No. 12-293, 2013 WL 1455758, at *5-*6 (E.D. La. Apr. 9, 2013) (finding that although explicit notification of IME had not been provided by requesting party, a combination of information in the Complaint, as well as subsequent uncontested representations, were sufficient to limit the scope of the examination).

Here, although AC does not attach the notice of its IME to its motion, the response email from Roberts plainly indicates an awareness of that email and by extension, the notice. Moreover, AC's motion states the date of the Dr. Estrada's proposed examination as May 1, 2013, which Roberts does not contest. Finally, the medical records attached to AC's motion pertain only to examination of Roberts' right knee, and AC's argument pertains only to an examination of Roberts' right and left knees. Therefore, there is sufficient evidence from the filings on the record to establish that AC intends for the examination to occur on May 1, 2013, and that the examination is limited in scope to Roberts' knees. Therefore, the scope of AC's IME is reasonably limited to these two alleged injuries.[3] In sum, AC has demonstrated "good cause" to conduce the medical examination in question.

### 3. Injunction Request

AC also argues that Roberts should be enjoined from undergoing any surgery until it has an

---

[3] Although AC does not state *where* Dr. Estrada's office is located, to the degree Dr. Estrada's office is located at an unreasonable distance, Roberts has failed to argue the same.

9

opportunity to conduct the IME.  However, AC cites no law in support of its position.  While courts in this district have enjoined medical procedures in the past, such injunctions have typically issued where the Court has found, based on the representations of the parties, that the proposed medical procedure "was not necessary to prevent life-threatening medical complications."  *Washington v. Carolina Casualty Insurance Co.*, No. 13-260, 2013 WL 871890, at *2 (E.D. La. Mar. 8, 2013) (Roby, M.J.).  By contrast, where a party's physician believes that surgery would be beneficial, such injunctions have been disallowed as they "would be a disservice to the public interest . . . [and] constitute an intrusion by the courts into the judgment of a private individual and his physician." *Benjamin v. Transporte Navieros, Inc.*, No. 93-1542, 1993 WL 561882, at *1 (E.D. La. Oct. 11, 1994) (citing *Winston v. Lee*, 470 U.S. 753 (1985); *See L & M Bo-Truc Rental, Inc. v. Shadigas*, No. 91-1178, 1991 WL 42582, at *1 (E.D. La. Mar. 28, 1991) (same).

Here, although it is unlikely that any proposed knee surgeries are "life threatening," there is no agreement between the parties that this is not the case.  Considering the skepticism by which courts in this district have approach invitations to intrude upon the "judgment of a private individual and his physician," the Court must construe a lack of resolution in the negative.  Accordingly, AC's request for an injunction is denied.

### 4. Attorney's Fees

In the instant motion, AC also requests the reasonable attorney's fees, costs, and expenses it has incurred in filing the instant motion.  (R. Doc. 9-1, p. 6).  AC does not cite any law in connection with its request, and the Court notes that Roberts has not failed to comply with a prior court Order compelling his attendance at the IME.  *See* Rule 37(b)(2)(B).  Moreover, the Court finds that Roberts had a credible, although ultimately unsuccessful, basis for objecting to the examination.  In these

circumstances, an award of attorney's fees is not appropriate.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant, AC Marine, Inc.'s, ("AC") *Ex Parte* **Motion for Expedited Hearing and Incorporated Memorandum (R. Doc. 10)** is **GRANTED**.

**IT IS FURTHER ORDERED** that AC's **Motion to Compel Independent Medical Examination (R. Doc. 9)** is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Roberts is ordered to appear for an Independent Medical Examination ("IME") at the office of Dr. Lance Estrada, ("Dr. Estrada") on May 1, 2013. The scope of Dr. Estrada's examination includes the condition of Roberts' right and left knees.

**IT IS FURTHER ORDERED** that AC's request to enjoin Roberts from undergoing surgery on either his right or left knee until the time Dr. Estrada conducts his IME of Roberts is **DENIED**.

**IT IS FURTHER ORDERED** that AC's request for attorney's fees, costs, and expenses is **DENIED**.

New Orleans, Louisiana, this 29th day of April 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**